# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

| | | |
|---|---|---|
| MONICA BROWN | ) | |
| 132 36th St NE | ) | |
| Washington, D.C. 20019 | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | Civil Action No.:_____ |
| | ) | |
| THE DISTRICT OF COLUMBIA | ) | |
| | ) | **JURY DEMANDED** |
| *Defendant.* | ) | |
| _____ | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, Monica Brown, by and through undersigned counsel, hereby files suit against the named Defendant for the causes of action stated as follows:

## INTRODUCTION

1.     Plaintiff Monica Brown ("Plaintiff" or "Ms. Brown") brings this civil action pursuant to Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.*; and Title V, Section 503 of the ADA, 42 U.S.C. § 12203, for relief from discrimination and a hostile work environment based on Disability (Physical), and retaliation for engaging in a protected activity (prior EEO activity).

2.     The District of Columbia ("Defendant") discriminated against Plaintiff on the basis of her Disability (Physical) and subjected her to a hostile work environment and retaliation for engaging in a protected activity during the course of her employment with the District of

Columbia Contract and Procurement Administration, Office of the Deputy Director for
Administration of the Child and Family Services Agency.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to Title I of the ADA, as amended, 42 U.S.C. §§
12117. Further, this Court has jurisdiction over this Complaint because there is diversity of the
parties, and the Complaint presents a question of federal law. 28 U.S.C. §§ 1331 (federal
question) and §§ 1332 (diversity).

4.      Venue properly lies within this Court pursuant to 28 U.S.C. § 1391 because Defendant's
headquarters are located in the District of Columbia and a substantial part of the acts and
omissions that give rise to this Complaint occurred within the District of Columbia.

## PARTIES

5.      Ms. Monica Brown is currently domiciled at 132 36th Street, Northeast, Washington,
D.C., 20019.  At all relevant times, Ms. Brown has been an employee of the District of Columbia
Contract and Procurement Administration, Office of the Deputy Director for Administration of
the Child and Family Services Agency. Ms. Brown is a resident of Washington, D.C., and a
United States citizen.

6.      Defendant, the District of Columbia, operates the Child and Family Services Agency of
the District of Columbia Contract and Procurement Administration. The District of Columbia
Child and Family Services Agency is the public child welfare agency in the District of Columbia
responsible for protecting child victims and those at risk of abuse and neglect and assisting their
families. Defendant's headquarters is located at 200 I Street, SE, Washington, DC 20003.

7.      Defendant is subject to suit for the discriminatory acts and/or omissions of employees or
agents of Defendant; in addition, Defendant is the employer of persons who have committed

2

discriminatory acts and/or omission against Plaintiff within the course and scope of their employment. Therefore, Defendant is liable pursuant to the doctrine of *Respondeat Superior*.

## EXHAUSTION OF REMEDIES

8.     Ms. Brown has exhausted all of her administrative remedies.

9.     On July 1, 2022, Ms. Brown initiated an EEO complaint (Charge No. 570-2022-02474) alleging discrimination and harassment based on Sex and Disability.

10.     On February 2, 2023, Ms. Brown filed a Charge of Discrimination (Charge No. 570-2023-01354) based on Disability, and in Retaliation for engaging in prior protected activity with the Equal Employment Opportunity Commission (EEOC), for the adverse employment actions alleged herein.

11.     On July 13, 2023, the EEOC issued Plaintiff a Notice of Right to Sue, which provided Ms. Brown ninety (90) days from receipt of that Notice to file a complaint in an appropriate United States District Court.

12.     Pursuant to that Notice, Ms. Brown now brings this federal civil complaint.

## FACTS

13.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

14.     Ms. Brown has served at the District of Columbia Child & Family Services as a Contracts Supervisor MSS-1102-13 since April 2017.

15.     Ms. Brown has never been subject to disciplinary action. From her first evaluation in September 2017, Ms. Brown's supervisors gave her a 3.00 ranking and described her as a "valued performer." This rating means that she has consistently met performance expectations and may occasionally exceed expectations. This scoring is reflective of the scale which is: 1 -

3

inadequate performer, 2 - marginal performer, 3 - valued performer, 4 - highly effective performer, and 5 - role model.

16.     In March 2018, Ms. Brown received a Plaque of Appreciation.

17.     In October 2019, Ms. Brown was promoted to Supervisory Contract Specialist, MSS-1102-13.

18.     On September 11, 2020, Ms. Brown made her first request for Reasonable Accommodation. Even after following up on September 15, 2020, she did not receive a response.

19.     On September 28, 2020, an HR Representative responded saying they provided Ms. Brown with the wrong form to complete the ADA accommodations request.

20.     On September 29, 2020, Ms. Brown received confirmation in a letter addressed to Ms. Brown's supervisor that she was approved for continuous leave from August 24, 2020, to October 7, 2020. Ms. Brown did not receive this letter from her supervisor until October 16, 2020. HR did not send Ms. Brown the letter until October 26, 2020.

21.     From November 2020 to October 2021, Ms. Brown worked completely remotely. On Ms. Brown's performance evaluation for the period of October 2020 to September 2021, Ms. Brown was rated a 2.62 and described as a valued performer.

22.     In October 2021, the District required Ms. Brown to come back to the office full-time.

23.     In that same month, Ms. Brown requested Reasonable Accommodation to work in the office one day a week for four hours per her physician's recommendation. Her physician recommended that she be allowed to telework for the remaining time.

24.     The District delayed the approval of Ms. Brown's Reasonable Accommodation request until November 3, 2021, without justification.

25.     On December 15, 2021, Ms. Brown was recognized with a Certificate of Appreciation for her "10 Years of Service to DC Government."

26.     On April 28, 2022, Ms. Brown's physician updated his recommendations to reflect that she be allowed to telework for two, four-hour in-office workdays per week in addition to her already approved two telework days per week. Ms. Brown updated the original Reasonable Accommodation request to reflect these changes. The District delayed approval of this request for over two months, but finally approved it on July 5, 2022.

27.     In May 2022, Ms. Brown was tapped to fill in for Mrs. Sigamoni while Mrs. Sigamoni was on leave for six weeks.

28.     On July 1, 2022, Ms. Brown initiated an EEO complaint (Charge No. 570-2022-02474) alleging discrimination and harassment based on sex and disability. Ms. Brown's supervisor, Mrs. Tara Sigamoni, was named as the responsible management official.

29.     On July 1, 2022, Ms. Brown reported concerns to Mr. John Simmons Deputy Director for Administration, Office of the Deputy Director for Administration that Mrs. Sigamoni was spreading rumors in the office, including that Ms. Brown would flirt with men in the work group, specifically Mr. Charlie Samuels, Jr.

30.     On July 11, 2022, Ms. Brown had a virtual meeting to discuss Mrs. Sigamoni's actions and comments.

31.     By October 2022, Ms. Brown worked in the office two days a week for four hours a day. Ms. Brown worked remotely the rest of the time.

32.     On October 20, 2022, HR told Ms. Brown they would not support her working her remaining four hours from home. She requested an extension to renew her approved reasonable

5

accommodation request to include updated recommendations from her physician. Ms. Brown's request was denied.

33.     On October 26, 2022, Human Resources and the DC Government Employee Assistance Program facilitated a mediation between Ms. Brown and Mrs. Sigamoni.

34.     On October 27, 2022, Ms. Brown informed the ADA Coordinator that she had previously been approved to telework for four hours a day on in-office workdays.

35.     On her last evaluation, Ms. Brown was ranked 2.53 valued performer.

36.     On November 1, 2022, the ADA coordinator upheld the reasonable accommodation request denial stating that the physician's ADA letter was vague. Upon this news, Ms. Brown started using eight hours of sick leave each week, equating to sixteen hours of leave per pay period.

37.     In November 2022, Ms. Brown was again asked to fill in for Mrs. Sigamoni while she was on leave. This was the second time Ms. Brown was asked to fill in for Mrs. Sigamoni despite mostly working remotely and only working two four-hour in-office shifts per week. Ms. Brown was not paid for the work she would do at home after working her four hours in the office.

38.     On November 8, 2022, Ms. Brown emailed Mr. Simmons and informed him of Mrs. Sigamoni's continued and escalating actions, including but not limited to starting and spreading rumors about Ms. Brown.

39.     On December 5, 2022, Ms. Brown again requested an extension to renew her request for reasonable accommodations based on her physician's recommendations. This request was denied.

40.    On December 12, 2022, Ms. Brown again informed Mr. Simmons of Mrs. Sigamoni's continued and escalating behavior, including but not limited to starting and spreading rumors about Ms. Brown. Mrs. Sigamoni said Ms. Brown's team did not have faith in her. Mrs. Sigamoni made recommendations to HR to deny Mrs. Brown's accommodation based on her job performance. To date, this communication has not been acknowledged.

41.    On December 19, 2022, Ms. Brown had a meeting with the HR ADA Specialist Annie Johnson and the HR Manager Keyana McNeil about her reasonable accommodation request dated December 5, 2022. At this meeting, Ms. Brown was informed that her Reasonable Accommodation request was being denied due to Mrs. Sigamoni's recommendation.

42.    On December 20, 2022, Ms. Brown received official notification that the Agency would be denying parts of her Reasonable Accommodation request stating that the physician's recommendations were "unreasonable."

43.    As a result, Ms. Brown began having trouble sleeping and eating. She also experienced excessive muscle and nerve pain. Ms. Brown noticed she had become overwhelmingly anxious, depressed, and fearful of losing her livelihood due to the persistent denial of her reasonable accommodation requests.

44.    On January 6, 2023, Ms. Brown was referred to a psychotherapist to treat her symptoms. She received an increased dosage of Cymbalta and was prescribed Ativan.

## CAUSES OF ACTION

### COUNT ONE
**Title I of the Americans with Disabilities Act of 1990**
**42 U.S.C. § 12111, *et seq*.**
**(Discrimination based on Disability)**

45.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

46.     Plaintiff suffers from multiple physical disabilities – including but not limited to back pain and drowsiness and, as such, Plaintiff is a member of a protected class.

47.     As an employee of Defendant, Plaintiff was treated differently and subjected to different terms and conditions of employment in comparison to the non-disabled workers that Defendant employed.

48.     Defendant discriminated against Plaintiff by denying her the same conditions and privileges of employment as her non-disabled colleagues. Defendant went so far as to state it denied telework opportunities because the physician's letter was vague.

49.     Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in loss of income and other disadvantages in the workplace.

50.     The reasons proffered for Defendant's unlawful conduct are not legitimate and are pretext for its discriminatory conduct.

51.     Defendant knew that Plaintiff is disabled prior to the discriminatory mistreatment.

52.     Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her disabilities.

53.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her disabilities.

54.     As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues for suffer, from harm, injury and monetary damages – including but not limited to past and future loss of sick leave, income, expenses and costs – and is entitled to all available legal and equitable remedies.

55.    Plaintiff was made to endure a great amount of pain and suffering, and her injury is permanent in nature. Defendant's treatment and actions are ongoing.

**COUNT TWO**
**Title V, Section 503 of the Americans with Disabilities Act of 1990**
**42 U.S.C. § 12203**
**(Employment Discrimination on the Basis of Engaging in Protected Activity)**

56.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

57.    Plaintiff has repeatedly engaged in protected activity, including, without limitation, informing her other supervisors, seeking out and attending internal mediation sessions and filing an EEOC complaint.

58.    Defendant was aware of Plaintiff's activity at all relevant times.

59.    As an employee of Defendant, Plaintiff was treated differently and subjected to different terms and conditions of employment because of her protected activity.

60.    Defendant retaliated against Plaintiff by subjecting her to harassing statements and spreading rumors about Plaintiff after she contacted the EEOC.

61.    Defendant retaliated against Plaintiff when it repeatedly denied Plaintiff's reasonable accommodation requests providing little to no explanation.

62.    Defendant retaliated against Plaintiff when it repeatedly failed to acknowledge Plaintiff's reasonable accommodation requests.

63.    Defendant retaliated against Plaintiff by denying her accommodations requests saying only that they were vague, despite Plaintiff's requests being previously approved.

64.    Defendant retaliated against Plaintiff by denying her the same conditions and privileges of employment as her other colleagues. Defendant went so far as to state it denied telework opportunities because the physician's letter was vague.

9

65.     Defendant has subjected Plaintiff to adverse employment actions, including the adverse actions alleged herein and otherwise deprived Plaintiff of her rights because of her protected activity.

66.     Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in loss of sick leave, income, and other disadvantages in the workplace.

67.     Defendant has limited, segregated and classified Plaintiff in a way that deprives her of her full salary and otherwise adversely affects her status as an employee because of her protected activity.

68.     The reasons proffered for Defendant's unlawful conduct are not legitimate and are pretext for its retaliation.

69.     Defendant knew that Plaintiff engaged in protected activity prior to the retaliatory mistreatment.

70.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her protected activity.

71.     As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues for suffer, from harm, injury and monetary damages – including but not limited to past and future loss of sick leave, income, expenses and cost – and is entitled to all available legal and equitable remedies.

72.     Plaintiff was made to endure a great amount of pain and suffering. Defendant's treatment and actions are ongoing.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

10

a.      Award Plaintiff the Reasonable Accommodation request originally denied on December 20, 2022;

b.      Order Defendant to restore sick and annual leave used from November 1, 2022, through January 18, 2023 (sixteen hours each pay period);

c.      Order Defendant to restore sick and annual leave used from January 19, 2023, through resolution of the discrimination claim (thirty-two hours each pay period);

d.      Award reasonable attorney fees, costs, and expenses incurred for this action;

e.      Award compensatory damages for pain and suffering as permitted by statute;

f.      Award equitable, declaratory, and injunctive relief; and

g.      Award such other and further relief as this Honorable Court deems just and proper.

## **JURY DEMAND**

73.      Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.


Respectfully submitted,


_____
A. MARQUES PITRE, Partner
(DC Bar No. 503119)
Pitre & Associates, LLC.
Ronald Reagan Building and
International Trade Center
1300 Pennsylvania Avenue, N.W., Suite 700
Washington, DC 20004
Phone: 202-204-3006
Direct: 202-840-6797
Email: ampitre@ampitreassociates.com

*Counsel for the Plaintiff*